## UNITED STATES *v.* THE HENRIETTA ESCH.

*(Circuit Court, S. D. Alabama.  1882.)*

SMUGGLING—CIRCUMSTANTIAL EVIDENCE—CONDEMNATION.

Where, in an action against a vessel for an attempt to smuggle foreign goods liable to customs duties, there is an irreconcilable conflict in the evidence given on the one side by the government officers, and on the other by the officers and part of the crew of the suspected vessel, and the case made out by the government witness shows—*First*, concealment on the part of the captain and mate of the fact that the suspected vessel had come in through the pass, where, on an island in said pass, the smuggled goods were found, instead of coming in by the main channel; *second*, prevarications and misrepresentations excusing the fact that she had no boarding officer aboard; *third*, absence of the yawl and all of the crew on the night of the seizure of the goods, together with finding on the yawl mud and grass similar to that where the goods were found; *fourth*, a spliced oar produced in court, and found at the place of the goods which a witness identifies as the same as that he saw the day previous on board and belonging to the vessel's yawl; *fifth*, finding on board the vessel, after seizure, goods of the same brand in small quantity in the possession of the captain, with other circumstances, are sufficient to warrant the judgment of condemnation rendered by the district court, and such judgment will be affirmed.

On Appeal.

*George M. Duskin,* U. S. Atty., for the United States.

*Anderson & Bond,* for appellants.

PARDEE, C. J.   The cigars and cigarettes found under a tarpaulin on the end of Pinto's island were undoubtedly foreign articles, brought there from some vessel to be smuggled into the United States.  When found they evidently had not been there any great length of time.  It seems clear, also, that they must have been brought to the port of Mobile by the Zachary Taylor, the Henrietta Esch, or the Myra A. Pratt, for these were all the foreign vessels arriving from April 2 to April 14, 1879, the day when the cigars were seized.  The Zachary Taylor arrived on the twelfth of April, reported at the regular boarding station at Fort Morgan, took on an inspector, and went directly to town.  She was carefully examined, and there is no suspicion in the record as to any illicit conduct on her part.  The same may be said, in substance, of the Myra A. Pratt, which arrived on the 14th, with the additional exculpating fact that she arrived after the time fixed by the witness Isadore Tranier of his discovery of the suspicious goods.  The Henrietta Esch arrived early in the morning of the 13th. She took on no boarding officer, having passed westwardly from Pensacola light—by Sand island—and Mobile bar along the shore to

Horn island pass, and thence through that pass and Grant's pass to Mobile bay. She anchored early in the morning of the 13th, and lay for several hours near the place where the cigars were found before going to the wharf at Mobile. So far there is no conflict of testimony, and yet, from it, it seems clear that a case of strong suspicion is made against the Henrietta Esch.

As to the balance of the case, I have examined the entire evidence, and re-examined it, with the endeavor to reconcile the conflicting statements, or find the key which would lead to the truth of the case. I find it impossible to harmonize the evidence. The witnesses, on one side or the other, have falsified; and their evidence on one side must be rejected. The evidence of Captains Rabby, Schlief, Avery, and Terry is not in question. It may be all taken as true and correct and not affect the case, because it is all negative in character and not necessarily inconsistent with the charge against the Henrietta Esch.

The real question comes between the government witnesses and the captain, mate, and two boys of the schooner.

The government witnesses, although mainly officers of the customs, are not shown to have any interest in the case beyond that naturally arising in the proper prosecution of their duties. Isadore Tranier, the discoverer of the goods, does not appear to have any interest. The captain of the Esch and the colored boy, Johnson, are chargeable only with general interest in the schooner on which they were employed; and the mate and his son are in the same category, only the mate is one-half owner of the schooner implicated. And here it may be noticed that two men were on the schooner from Kingston to Mobile. Antonio Sylvestre, one of the crew, and Antonio Sylvo, a disabled sailor, have not been called. Sylvestre, it appears, run away when the schooner was seized. Sylvo is not accounted for.

The case, as made by the government witnesses against the schooner, in addition to the point first referred to,—i. e., that the Esch was the only vessel that could have committed the offence,— shows:

(1) Concealment on the part of the captain and mate of the fact that the Esch had gone to the westward and come in through Grant's pass, instead of by the main channel; (2) prevarications and misrepresentations excusing the fact that the schooner had no boarding officer aboard; (3) absence of the yawl and all of the crew of the Esch on the night of the seizure of the cigars, together with finding on the yawl mud and grass similar to that where the cigars were found; (4) a spliced oar produced in court and found at the place

of the cigars, which one witness, Samuels, identifies as the same spliced oar that he saw the day previous on board and belonging to the Esch's yawl-boat; (5) finding on board the Esch, after the seizure of the cigars, cigars of the same brand in small quantity in the possession of the captain.

There are several other circumstances of a suspicious nature shown, but the foregoing are the important ones.

The respondents meet these circumstances mainly by a vigorous denial either of the particular fact, or by a general denial that the Esch brought the cigars. The concealment of the schooner's course and the excuses made for not taking on a boarding officer are almost entirely unexplained. The absence of the yawl and crew is denied. The spliced oar is repudiated, and the fact that when siezed the Esch had only one oar for her yawl is explained by a circumstantial account given by all of the witnesses of the loss of an oar overboard in the gulf on the homeward voyage. The mud and grass on the yawl are accounted for by showing that the two boys had the boat in the day-time, rowing for pleasure in the harbor, making a landing at one place where there was sand and grass. Nothing is said as to the particular brand of cigars given by the captain to his friends.

Finding, as I have before, that the evidence on one side must be rejected, I cannot avoid the conclusion that the evidence of the government witnesses is best entitled, under all the circumstances, to credence. This evidence, with that undisputed in relation to the opportunity for the Esch to have unloaded the goods, and that no other vessel could have done so, makes a complete case for the government, and warrants the judgment of condemnation rendered by the district court.

A decree will therefore be entered affirming the judgment rendered in this case by the district court, with costs.